SLR:KAN:CSK

**M-10-819**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| IN RE THE SEIZURE OF: | TO BE FILED UNDER SEAL |
| ANY AND ALL FUNDS CURRENTLY ON DEPOSIT OR TRANSFERRED TO OR THROUGH HSBC BANK ACCOUNT NO. 672715813 HELD IN THE NAME OF OR FOR THE BENEFIT OF BEST EQUIPMENT MEDICAL SUPPLY CO., INC. UP TO AT LEAST $660,901; AND ANY AND ALL PROCEEDS TRACEABLE THERETO. | AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

(Related to M 10-789) |

- - - - - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

   BRIAN DYSON, being duly sworn, hereby deposes and states as follows:

   1. I have been a Special Agent with the United States Department of Health and Human Services, Office of Inspector General ("HHS-OIG"), for approximately ten years. During my tenure with HHS-OIG, I have participated in a variety of criminal health care fraud investigations involving schemes to defraud Medicare, including schemes to bill for unnecessary treatment or services that were not provided. During the course of these investigations, I have interviewed witnesses, including patients, medical providers, and clinic employees; debriefed informants; reviewed recorded conversations; conducted physical surveillance;

executed search warrants; reviewed Medicare claims data, bank records, telephone records, patient charts, and other business records; and employed other investigative techniques. I am familiar with the records and documents maintained by health care providers, and I am familiar with the laws and regulations related to the administration of the Medicare program.

2. Currently, I am assigned to one of the Health Care Fraud Prevention and Enforcement Action Strike Force ("Strike Force") teams, which is staffed with law enforcement agents and officers from the HHS-OIG and the Federal Bureau of Investigation, as well as state and local investigators from the New York State Office of the Attorney General, Medicaid Fraud Control Unit, the New York City Police Department, and the New York City Human Resources Administration. The Strike Force is tasked with investigating Medicare and Medicaid fraud.

3. I, along with other members of the Strike Force, have participated in an investigation of the following defendants (collectively, the "Defendants"): Oleg Kam, Oleg Kheyson, and their entity Best Equipment Medical Supply, Inc. ("Best Equipment"). To date, the investigation has revealed that, since at least January 2006 and continuing to at least on or about the present ("the relevant period"), the Defendants, together with others, have violated Title 18, United States Code, Section 1349 by knowingly and willfully conspiring to execute and

2

attempting to execute a scheme and artifice to defraud Medicare, a health care benefit program, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347.

4. This affidavit is submitted for the purpose of obtaining a warrant authorizing the government to seize the above-captioned funds (the "Subject Funds"), as there is probable cause to believe that the Subject Funds constitute or are derived from the gross proceeds of the Defendants' conspiracy and, therefore, are subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).[1] The Subject Funds consist of: all funds on deposit in HSBC Bank Account No. 672715813, held in name of or for the benefit of Best Equipment, up to and including the sum of at least $660,901, and all proceeds traceable thereto ("the HSBC Account").

5. The facts set forth in this affidavit are based in part on information I have learned from my review of written documents prepared by, and conversations with, members of the

---

[1] Section 982(a)(7) of Title 18 provides for the mandatory forfeiture of "property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to [a Federal health care offense]." (Emphasis added).

3

Strike Force, my review of bank records obtained pursuant to grand jury subpoenas, and information obtained from TriCenturion ("TriCen").[2] Because this affidavit is submitted for the limited purpose of seizing the Subject Funds, I have not set forth herein each and every fact that I or other members of the Strike Force have learned during the course of our investigation into the Defendants.

I. The Investigation

6. On July 13, 2010, this Court issued warrants authorizing the arrest of the Defendants. Attached hereto as Exhbit A, and incorporated herein by reference, is a copy of the Complaint and Affidavit in Support of Application for Arrest Warrants, dated July 13, 2010 (M10-789)( the "Complaint") that I submitted in support of the government's application for the arrest warrants. The Complaint sets forth information obtained during the course of the investigation that supports a finding of probable cause to believe that the Defendants violated Title 18, United States Code Section 1349. In addition to providing background with respect to how the Medicare program is administered (Complaint, ¶¶ 4-12), the Complaint discusses each of the Defendants and their respective involvement in the entity,

---

[2] Centers for Medicare and Medicaid Services ("CMS"), which administers the Medicare program, has contracted with TriCen to detect fraud with respect to Durable Medical Equipment ("DME") claims in the New York area.

4

Best Equipment, through which they perpetrated their fraud scheme at two locations in Brooklyn, specifically 1773 West 1st Street, Ground Floor, Brooklyn (the "West 1st Location") and 3071 Brighton 13th Street, Basement, Brooklyn (the "Brighton 13th Location"). Id., ¶¶ 13-18.

7. Specifically, a review of billing data for over 3,000 Medicare beneficiaries demonstrates that during the relevant period of approximately four years, the Defendants conspired to submit or caused to be submitted fraudulent DME claims to Medicare for Orthopedic Inserts. Complaint, ¶ 20. In order for Best Equipment to receive reimbursements for Orthopedic Inserts, the beneficiary receiving the Orthopedic Inserts must also have a shoe that is a integral part of a Medicare-covered leg brace. Id. Despite this requirement, a review of Best Equipment's billing data demonstrated that none of the over 3,000 beneficiaries to whom Best Equipment claimed to provide Orthopedic Inserts between 2006 and 2010, ever received orthopedic shoes or leg braces from Best Equipment or any other Medicare provider. Id.

8. Based on the interviews of numerous Medicare beneficiaries, the investigation further revealed that Best Equipment's claims for Orthopedic Inserts were fraudulent in that: (1) the Orthopedic Inserts were not molded to a patient model or foot as required, (2) the patients never received the

Orthopedic Inserts but instead received ordinary shoes such as sneakers, winter boots or sandals not covered by Medicare, and/or (3) the patients did not have the shoe and leg brace as required for reimbursement. Complaint, ¶¶ 21, 23-27.

9. Further, although Best Equipment operating from the West 1st Location was approved for participation as a Medicare provider, it was never approved as a Medicare provider with respect to it operations at the Brighton 13th Location. Complaint, ¶ 17. Yet, during the relevant period, Best Equipment submitted multiple false Medicare claims and received reimbursements for services provided to patients at the Brighton 13th Location. Complaint, ¶¶ 23, 24, 26, and 30.

    II. Traceability of the Subject Funds to the Gross Proceeds of the Defendants' Conspiracy to Defraud the Medicare Program.

HSBC Account

10. Payment by Medicare Part B on the false claims submitted by Best Equipment were made to the HSBC Account designated by Best Equipment. Complaint, ¶¶ 10-11, 15, 18.

11. Both Defendants are signatories on the Best Equipment HSBC Bank account into which Medicare checks are deposited. Id., ¶ 15.

12. To date, the investigation reveals that during the relevant period, Best Equipment was reimbursed by Medicare for over 3,000 of the false Orthopedic Insert claims in the amount of

at least $660,901.

13. During the relevant period, all $660,901 was deposited into or through the HSBC Account.

14. A review of subpoenaed bank records during the year 2007 further shows that every two weeks, for a six month period, at least $1,600 was transferred, withdrawn, and or paid out from the HSBC account directly or indirectly to each of the Defendants.

15. As of July 16, 2010, the HSBC Account had a balance of only $84,520.00.

III. Conclusion

16. It is respectfully submitted that there is probable cause to believe that the Subject Funds are traceable, either directly or indirectly, to the Defendants' conspiracy to defraud the Medicare Program and, accordingly, are subject to seizure and forfeiture pursuant to 18 U.S.C. § 982(a)(7).

17. A restraining order, pursuant to Title 21, United States Code, Section 853(e), will not be sufficient to preserve the assets in question given the ease with which funds may move out of the bank account discussed above (via wire, internet banking, etc.).

18. Finally, given the confidential nature of this continuing investigation, I respectfully request that this affidavit and the attached Complaint, be filed under seal until


...

further order of the Court, except that copies of the seizure warrant may be served at the time they are executed, and that the government may provide copies of the warrant and this affidavit, and attached Complaint, as required by its discovery obligations, including Rule 16 of the Federal Rules of Criminal Procedure.

WHEREFORE, your deponent respectfully requests, pursuant to Title 18, United States Code, Sections 981(b), 982(a)(7), Title 21, United States Code, Section 853(f), and Fed. R. Crim. P. 41, that seizure warrant be issued authorizing the seizure of: all funds on deposit in HSBC Bank Account No. 672715813, held in name of or for the benefit of Best Equipment, up to and including the sum of at least $660,901 and all proceeds traceable thereto ("the HSBC Account").

_____
BRIAN DYSON
Special Agent
HHS-OIG

Sworn to before me this
19th day of July, 2010.

_____
UNITED STATES MAGISTRATE JUDGE RAMONE E. REYES, JR.
EASTERN DISTRICT OF NEW YORK

**EXHIBIT A**

WYC:UAD

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M10- 789

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

— against —

OLEG KAM and
OLEG KHEYSON,

Defendants.

- - - - - - - - - - - - - - - X

TO BE SEALED UNTIL 8:00 A.M.
FRIDAY, JULY 16, 2010

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF APPLICATION FOR
ARREST WARRANTS

(T. 18, U.S.C., §§ 1349, 2 and
3551 et seq.)

EASTERN DISTRICT OF NEW YORK, SS:

Brian Dyson, being duly sworn, deposes and says that he is a Special Agent with the United States Department of Health and Human Services, Office of the Inspector General ("HHS-OIG"), duly appointed according to law and acting as such.

Upon information and belief, there is probable cause to believe that in or about and between January 2006 and July 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants OLEG KAM, OLEG KHEYSON, and BEST EQUIPMENT MEDICAL SUPPLY, INC., together with others, did knowingly and willfully conspire to execute and attempt to execute a scheme and artifice to obtain money from Medicare by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

(Title 18, United States Code, Sections 1349, 2, and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:

1. I have been a Special Agent with the Department of Health and Human Services-Office of Inspector General for approximately ten years. The information contained in this Affidavit is based on my own observations, reviewing reports and discussions I have had with other law enforcement personnel.

2. Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause to arrest, I have not described all of the relevant facts and circumstances of which I am aware. Additionally, except as otherwise noted, I have not differentiated between information about which I have personal knowledge, and information received from other law enforcement sources.

3. Except where otherwise noted, all conversations described in this Affidavit are set forth in part and in substance only.

The Medicare Program

4. The Medicare Program ("Medicare") is a federal health care program providing benefits to persons who are over the age of 65 or disabled. Medicare is administered by the

3

Centers for Medicare and Medicaid Services, a federal agency under the United States Department of Health and Human Services.

5. Medicare is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

6. Medicare includes coverage under two primary components, hospital insurance ("Part A") and medical insurance ("Part B"). Medicare Part B covers the costs of physicians' services and outpatient care, including an individual's access to durable medical equipment ("DME"), such as orthopedic footwear.

7. Orthopedic footwear includes, among other items, customized orthopedic inserts for orthopedic shoes. Medicare covers customized orthopedic inserts provided that (a) the items are medically necessary, as determined by the treating physician, (2) a physician signs a prescription for the insert(s) and (3) the inserts are on a shoe that is an "integral part" of a covered leg brace and are medically necessary for the proper functioning of the brace.

8. Among others, Medicare covers two types of orthopedic shoe inserts: an insert molded to a patient model, for which Medicare pays approximately $260 per pair of inserts, and an insert formed to a patient's foot, for which Medicare pays approximately $100 per pair (collectively, the "Orthopedic Inserts").

9. Providers submit a Medicare Enrollment Application ("application") to Medicare to participate in Medicare and bill for claims. The application requires a provider to provide Medicare with information such as, the bank account where Medicare will deposit reimbursements, insurance forms and IRS forms.

10. Medical providers certified to participate in Medicare, whether clinics or individuals, are assigned a provider identification number ("PIN") for billing purposes. After a medical provider renders a service, the provider uses its PIN when submitting a claim for reimbursement to the Medicare contractor or carrier assigned to that provider's state.

11. Medicare providers who elect to submit claims electronically do so by enrolling in the Electronic Data Interchange (EDI). To participate in the EDI, each provider agrees to be responsible for all Medicare claims submitted by itself, its employees or its agents. Providers also agree that they only will submit claims that are accurate, complete and truthful.

12. A "beneficiary" is a person, typically over the age of 65, who receives medical benefits through the Medicare program.

### The Defendants

13. Oleg Kam is the President of Best Equipment Medical Supply, Inc. ("Best Equipment"), a medical provider certified to provide, among other items, Orthopedic Inserts, to Medicare beneficiaries.

14. Oleg Kheyson is the Vice President of Best Equipment.

15. Both Kam and Kheyson are signatories on the Best Equipment bank account at HSBC Bank USA, NA in which Medicare checks are deposited.

16. Best Equipment was incorporated in 2003 and operates out of two locations in Brooklyn, one at 1773 West 1st Street, Ground Floor, Brooklyn, NY 11223 (the "West 1st Location") and another at 3071 Brighton 13th Street, Basement, Brooklyn, NY 11235 (the "Brighton 13th Location").

17. On or about July 1, 2003, Kam submitted a Medicare application on behalf of Best Equipment so the company could participate in Medicare and bill for items and services provided to beneficiaries. Medicare approved the application on July 30, 2003. Best Equipment has never been approved as a Medicare provider with respect to its operations at the Brighton 13th Location.

6

18. On or about December 17, 2007, Kam submitted an EDI application on behalf of Best Equipment, agreeing to be bound by its terms.

The Fraudulent Scheme

19. The investigation of Best Equipment began in March 2010 as part of the Medicare Fraud Strike Force, a multi-agency initiative designed to combat and prosecute Medicare fraud in the Eastern District of New York and elsewhere around the country where high rates of fraud have been identified.

20. Beginning on or before January 2006 and continuing to at least on or about March 2010, Kam, Kheyson and Best Equipment, together with others unknown, engaged in a scheme to defraud Medicare by submitting and causing to be submitted fraudulent claims to Medicare for Orthopedic Inserts. In order for Best Equipment to receive reimbursements for Orthopedic Inserts, the beneficiary receiving the Orthopedic Inserts must also have a shoe that is an integral part of a Medicare-covered leg brace. Despite this requirement, a review of billing data for the more than 3,000 beneficiaries to whom Best Equipment claimed it provided Orthopedic Inserts between 2006 and 2010 revealed that none of these beneficiaries received orthopedic shoes or leg braces from Best Equipment or any other Medicare provider.

21. Further, interviews with beneficiaries revealed that Best Equipment's claims for Orthopedic Inserts were fraudulent in that (1) the Orthopedic Inserts were not molded to a patient model or foot, as required, (2) the patients never received the Orthopedic Inserts but instead received ordinary shoes such as sneakers, winter boots or sandals not covered by Medicare, and/or (3) the patients did not have the shoe and leg brace as required for reimbursement.

22. Between 2006 to 2010, Best Equipment did not submit to Medicare any claims for orthopedic shoes or leg braces for the more than 3,000 beneficiaries for whom Best Equipment claimed it provided the Orthopedic Inserts despite the fact that Medicare covers the Orthopedic Inserts <u>only if</u> it is used with a shoe that is an integral part of a Medicare-covered leg brace.

23. On or about March 25, 2010, Best Equipment submitted a claim to Medicare for Beneficiary A for approximately $135 for two Orthopedic Inserts. Medicare reimbursed Best Equipment approximately $108 for this claim. An interview of Beneficiary A revealed that she received ordinary shoes from Best Equipment's Brighton 13th Location, and that she never received nor needed a leg brace.

24. On or about March 16, 2010, Best Equipment submitted two claims to Medicare for approximately $135 each for Orthopedic Inserts provided Beneficiaries B and C. Medicare

8

reimbursed Best Equipment approximately $108 for each of the two claims. Interviews of Beneficiaries B and C revealed they received ordinary shoes from Best Equipment's Brighton 13th Location. They further stated that they have never needed or received a leg brace.

25. On or about March 2, 2010, Best Equipment submitted to Medicare a claim for approximately $135 for providing an Orthopedic Insert to Beneficiary D. An interview of Beneficiary D revealed that she never received any shoe inserts from Best Equipment. Instead, she received a pair of sneakers. Moreover, Beneficiary D reported that she has never had an orthopedic leg brace.

26. On or about March 2, 2010, Best Equipment submitted two claims to Medicare for approximately $135 each for Orthopedic Inserts provided to Beneficiaries E and F. Medicare reimbursed Best Equipment approximately $108 for each of these claims. An interview of Beneficiary E revealed that she received a pair of sneakers from Best Equipment's Brighton 13th Location. Investigators further learned that Beneficiary F, Beneficiary E's husband, received winter boots from the Brighton 13th Location. Neither Beneficiary E nor F has ever received or needed a leg brace.

27. On or about February 19, 2008, Best Equipment submitted a claim to Medicare for approximately $125 for two

9

Orthopedic Inserts for Beneficiary G. Medicare reimbursed Best Equipment approximately $100 for this claim. An interview of Beneficiary G revealed that she never received Orthopedic Inserts, but received two pairs of shoes, one of which was a pair of sandals. She further stated that she has never received nor needed a leg brace.

28. On or about July 1, 2010, HHS agents conducted a voluntary interview of Kam and Kheyson, posing as representatives conducting a Medicare contractor customer satisfaction survey. During this interview, Kam stated in sum and substance his understanding that, in order to receive reimbursements for Orthopedic Inserts, the beneficiary must also have an orthopedic shoe that is an integral part of a covered leg brace. Kam also stated that he has submitted claims to Medicare for Orthopedic Inserts. Both Kam and Kheyson stated in sum and substance that they trained other Best Equipment employees on how to submit claims to Medicare. Both Kam and Kheyson acknowledged that the Brighton 13th Location has not been approved as a Medicare provider.

29. Between January 1, 2006 and March 31, 2010, Best Equipment billed Medicare approximately $790,000 in connection with ORTHOPEDIC INSERTS.

30. Further, despite the fact that Best Equipment has not been approved as Medicare provider with respect to its

10

Brighton 13th Location, as noted herein, Best Equipment has submitted claims and received reimbursements for services provided to patients at Brighton 13th Location.

WHEREFORE, your deponent respectfully requests that the defendants OLEG KAM and OLEG KHEYSON be dealt with according to law, and also, due to the nature of this application, that this affidavit and the arrest warrants be filed under seal until execution of the arrest warrants.

BRIAN DYSON
Special Agent
Department of Health and Human Services

Sworn to before me this
13th day of July 2010

HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK